Commonwealth *v.* Simms, Appellant.

Argued November 21, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Albert S. Fein,* with him *Fein, Criden, Johanson, Dolan & Morrissey, P. C.,* for appellant.

*Louis A. Perez, Jr.,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 25, 1974:

Prior to his trial on charges of murder and aggravated robbery, appellant Robert Simms moved to suppress an allegedly involuntary written confession. Following a hearing, the motion was denied. At trial the defense unsuccessfully renewed its objection; post-trial motions were also denied.[1] Simms was found guilty by

---

[1] In post-trial motions, and again on appeal, appellant has urged three other grounds as compelling reversal. First, it is argued that appellant's detention for more than twenty-five hours prior to arraignment violated Pa. R. Crim. P. 118 and thus the resulting confession is inadmissible. See *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). This issue was not raised either in the mo-

a jury and sentenced to serve concurrent terms of seven and one-half to fifteen years for second degree murder and five to ten years for aggravated robbery. Upon review of all the circumstances, we find appellant's confession involuntary. We reverse and grant a new trial.[2]

On April 3, 1971, Patrick Jones died, apparently as a result of injuries sustained when he was robbed four days earlier. On May 17, 1971, appellant was arrested at his home at approximately 8:30 p.m., and transported to the Police Administration Building. Appellant was placed in an "interrogation room," constitutionally-required warnings were administered, and police detectives began questioning him about the death of Patrick Jones. During this initial interview, which lasted from 8:55 to 9:50 p.m., appellant denied any knowledge of the robbery-murder.

Simms was not interrogated again until the early morning hours of May 18. At 2:00 a.m., appellant was taken to a room where a polygraph examination was

---

tion to suppress or at trial. However, we need not reach the *Futch* issue or the effect of failure to raise it previously because we hold that appellant's confession was not freely and voluntarily given. See *Commonwealth v. Eiland*, 450 Pa. 566, 572, 301 A.2d 651, 653 (1973).

Second, it is asserted that the Commonwealth failed to prove that the victim's death was caused by an act of appellant. Finally, appellant argues that the trial judge erred by allowing proof of causation to be brought out on redirect examination, by interceding in behalf of the Commonwealth, and by permitting the District Attorney to frame hypothetical questions on redirect examination. Because we find appellant's confession involuntary, we need not address these two arguments.

[2] This Court has jurisdiction on appeal from convictions of felonious homicide pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211. 202(1) (Supp. 1973). The Superior Court, by order dated May 13, 1973, transferred to this Court the appeal from the conviction of aggravated robbery.

administered. The examination ended at 3:30 a.m., and appellant was returned to the interrogation room. Handcuffed to a metal chair, Simms remained there unattended until 9:30 a.m. when questioning resumed. This time, appellant was questioned for approximately ninety minutes.

One-half hour later appellant was taken to the polygraph room where he was again examined. This second polygraph test began at 11:35 a.m. and lasted until 12:45 p.m. Appellant was then returned to the interrogation room where he remained until 3:55 p.m., when a third polygraph examination was administered. Two sessions were involved in this examination which terminated at 5:55 p.m. Fifteen minutes later appellant was fed a light meal. Immediately following his dinner, he began dictating a formal statement. Since appellant cannot read, the "written" statement was read to him and he signed it at 9:10 p.m., approximately twenty-five hours after his arrest. Appellant was then arraigned. This statement constituted the sole evidence establishing guilt.

Because "[n]o single litmus-paper test for constitutionally impermissible interrogation has been evolved . . . ," *Culombe v. Connecticut,* 367 U.S. 568, 601, 81 S. Ct. 1860, 1878 (1961); *Commonwealth v. Eiland,* 450 Pa. 566, 573-74, 301 A.2d 651, 654 (1973),[3] we must in each case view the "totality of the circumstances." *Commonwealth v. Hallowell,* 444 Pa. 221, 226, 282 A.2d 327, 329 (1971); *Commonwealth v. Holton,* 432 Pa. 11, 17, 247 A.2d 228, 231 (1968). Circumstances which must be considered include the accused's physical and mental condition, the delay between arrest and arraign-

---

[3] See *Davis v. North Carolina,* 384 U.S. 737, 86 S. Ct. 1761 (1966); *Lynumn v. Illinois,* 372 U.S. 528, 83 S. Ct. 917 (1963); *Blackburn v. Alabama,* 361 U.S. 199, 80 S. Ct. 274 (1960).

ment,[4] the attitude of the police, and other "diverse pressures." *Culombe,* supra at 602, 81 S. Ct. at 1879; *Eiland,* supra at 573-74, 301 A.2d at 654.[5] Moreover, this Court has emphasized that when the question of voluntariness passes beyond the realm of physical coercion and into degrees of psychological coercion, the most careful attention will be afforded to any facts, circumstances, or events tending to overbear an accused's will. *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 149, 239 A.2d 426, 430 (1968).

Applying the totality test to the instant facts, we find this case remarkably similar to *Commonwealth v. Eiland,* supra. There a twenty year old youth with a tenth grade education initially denied criminal activity, was isolated for several lengthy periods, questioned intermittently, and examined by polygraph. After eleven hours, Eiland signed an incriminating statement. *Commonwealth v. Eiland,* supra at 573-74, 301 A.2d at 654. This Court reversed the conviction and granted a new trial because we concluded from the circumstances that Eiland's confession was involuntary.

Here, Simms was thirty-one years old but had never advanced past the second grade and had an I.Q. of sixty-one. He was questioned intermittently for twenty-two

---

[4] Although this case does not turn on an application of *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), the unnecessary delay prior to arraignment is nevertheless relevant in determining the voluntariness of Simms' confession. *Commonwealth v. Eiland,* 450 Pa. 566, 572, 301 A.2d 651, 653 (1973); *Commonwealth v. Koch,* 446 Pa. 469, 474-75, 288 A.2d 791, 793-94 (1972). Even prior to *Futch* an unnecessary delay in arraignment could be considered in assessing the totality of the circumstances influencing an accused's decision to confess. *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 154-55, 239 A.2d 426, 432-33 (1968).

[5] The burden is upon the Commonwealth to prove by a preponderance of the credible evidence that the confession was voluntary. *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 143-48, 239 A.2d 426, 427-29 (1968).

hours between periods of isolation lasting for up to six hours. Throughout these lengthy isolation periods, appellant was handcuffed to a metal chair in a police interrogation room. Three separate polygraph tests were performed. Simms gave no incriminating statement until 6 :15 p.m., more than twenty-two hours after he had been placed in custody.

This uncontradicted chronology, viewed as a whole, is a textbook example of unconstitutional coercion. We hold that here, as in *Eiland,* appellant's will was overborne. See *Spano v. New York,* 360 U.S. 315, 79 S. Ct. 1202 (1959); *Commonwealth v. Hallowell,* supra. Certainly this type of coercion is incompatible with the collective conscience of a free society. This confession, not "the product of an essentially free and unconstrained choice by its maker . . . ," *Culombe,* supra at 602, 81 S. Ct. at 1879, was involuntary. When the involuntary confession was introduced over objection at trial, appellant was denied due process of law.[6] *Crooker v. California,* 357 U.S. 433, 435, 78 S. Ct. 1287, 1289 (1958); *Commonwealth v. Riggins,* 451 Pa. 519, 525, 304 A.2d 473, 476 (1973); *Commonwealth v. Hallowell,* supra at 225, 282 A.2d at 329.

The judgment of sentence is reversed and a new trial granted.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

Mr. Justice EAGEN concurs in the result.

---

[6] See U.S. Const. amend. XIV, § 1; Pa. Const. art. I, § 9.